UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-429-H

RICHARD ORTEGA                                            PLAINTIFF

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, et al.,                          DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

      Plaintiff, Richard Ortega, brought this suit against United States Immigration and Customs Enforcement ("ICE"), Louisville Metro Corrections ("Metro Corrections"), and officers of each agency for alleged constitutional violations. Ortega alleges that on March 19, 2011, Metro Corrections officers William Skaggs and Lori Eppler removed him from his home where he was serving a sentence of home incarceration and placed him in jail based on an ICE detainer. As it so happens, the ICE detainer was invalid, as Ortega is a U.S. citizen. Ortega remained in jail until March 22, 2011.

      John Morton and Richard Wong are the Director of ICE and the head of ICE's Chicago field office, respectively. The Complaint also names as a defendant "Unknown Agents and Employees in the Employ of U.S. Immigration and Customs Enforcement."[1] Together with ICE, these Defendants (collectively, "ICE Defendants") moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

      Plaintiff concedes that ICE, an agency of the federal government, enjoys sovereign

---

[1] In a previous order, the Court postponed allowing discovery of the identities of these ICE employees until it had resolved the instant motion.

immunity as to his claims for constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Given that this Court lacks subject matter jurisdiction where a defendant enjoys sovereign immunity, *U.S. v. Sherwood*, 312 U.S. 584, 586-87 (1941), Plaintiff has consented to dismissal of all claims against ICE.

The supporting memorandum to the motion to dismiss notes that one rationale for dismissing the claims against Morton and Wong applies equally to the unknown ICE employees and warrants dismissal of claims against them as well. As such, the Court will first address the argument advanced on behalf of Morton, Wong, and the unknown ICE employees, then proceed to arguments that apply only to Morton and Wong.

I.

The Court reviews a motion under Rule 12(b)(6) taking all well-pleaded allegations from the Complaint as true, but need not accept legal conclusions or unwarranted factual inferences. *Booker v. GTE.net LLC*, 350 F.3d 515, 517 (6th Cir. 2003). The Court must determine whether Plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility arises when a complaint's factual content allows a reasonable inference of a defendant's liability. *Aschcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

II.

The ICE Defendants claim they are entitled to qualified immunity from this suit. Assessing qualified immunity requires two analytical steps: (1) determining whether the record, viewed most favorably to the plaintiff, shows that the defendants violated a constitutional right; and (2) determining whether that constitutional right was clearly established. *Cherrington v.*

2

*Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).[2] "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Plaintiff alleges that the ICE Defendants issued an invalid detainer, "causing an unreasonable seizure of his person and a restraint of his liberty," in violation of the Fourth and Fifth Amendments. First Am. Compl. 6. At this stage, the ICE Defendants do not contest whether Plaintiff has sufficiently alleged a constitutional violation. Presumably, that challenge will come later. Rather, the ICE Defendants challenge whether Plaintiff can show proper causation.

A.

Plaintiff must adequately allege that the ICE Defendants were "the 'moving force' behind the alleged deprivation of his federal rights," which is a causation inquiry. *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Causation in the constitutional sense is no different from causation in the common law sense." *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005); *see also Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004) ("tort law causation must govern our analysis of this *Bivens* claim"). The ICE Defendants' conduct must have been both the cause-in-fact and proximate cause of Ortega's seizure from his home and four-day incarceration in county jail. *Powers*, 501 F.3d at 608.

The only alleged conduct attributable to the ICE Defendants was the issuing of an invalid detainer. Ortega does not claim that the detainer required Metro Corrections or any government

---

[2]*Cherrington* was a 42 U.S.C. § 1983 case, but the qualified immunity analysis is identical under § 1983 and *Bivens* actions. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

3

entity to incarcerate him. Instead, he alleges Metro Corrections had a "long-standing policy to incarcerate any individual" with an ICE detainer. First Am. Compl. 5. The detainer changed how Metro Corrections determined Ortega's eligibility for home incarceration. Issuing the detainer was a cause-in-fact of the constitutional violation because, taking the Complaint's allegations as true, it was a "but for" factor resulting in Ortega's seizure – absent the detainer Metro Corrections would not have taken Ortega from his home and put him in jail. *See Powers*, 501 F.3d at 608 (applying "but for" test in constitutional causation analysis).

B.

The proximate cause analysis presents a closer question. Proximate cause is a matter of foreseeability – the Court must ask "whether it was reasonably foreseeable that the complained of harm would befall [Plaintiff] as a result of [Defendants'] conduct." *Id.* at 609; *see also Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (noting that *Bivens* defendants are "responsible for the 'natural consequences' of their actions"). A defendant may be held liable even where "an intervening third party is the immediate trigger for the plaintiff's injury . . . provided that the third party's actions were foreseeable." *Powers*, 501 F.3d at 609.

The Complaint alleges Metro Corrections maintained a policy of incarcerating any individual under its supervision with an immigration detainer, suggesting that it was Metro Corrections' choice to put Ortega in jail. However, Metro Corrections' exercise of discretion does not break the causal chain between ICE's issuing the detainer and Ortega's incarceration. *See, e.g.*, *Powers*, 501 F.3d at 609 (holding in a § 1983 suit that a municipal judge's decision to jail plaintiff for non-payment of a fine did not sever the chain of causation between a public defender's failure to move for an indigency hearing and the harm suffered by plaintiff), *and*

4

*Warner v. Orange Cnty. Dep't of Probation*, 115 F.3d 1068, 1072-74 (holding that a probation department could be held liable for recommending a plaintiff be sentenced to a treatment program with religious elements, even though a judge decided the sentence). The *Powers* court, citing examples from other circuits, explained that a judge's decision will only break the chain of causation and relieve a defendant of liability when the judge is fully apprised of material facts but still commits a legal error. *Id.* at 610.

The proximate cause analysis in *Powers* focuses on "whether a judicial act constitutes a superseding cause that relieves a defendant of liability," but does not expressly limit the principles applied to decisions made by judges. *Id.* The Court can apply the same proximate cause analysis to Metro Corrections, a third-party whose decision the ICE Defendants argue broke the causal link between the detainer and Plaintiff's four-day incarceration. However, Metro Corrections's decision was not a superseding cause because the Complaint does not allege that Metro Corrections was aware the ICE detainer on Ortega was invalid. Like the municipal judge in *Powers*, Metro Corrections was not fully apprised of this material fact when it decided to remove Ortega from his home and hold him in county jail. *Compare Egervary v. Young*, 366 F.3d 238, 249 (3d Cir. 2004) (holding judge's decision was superseding cause, relieving defendant of liability, where judge knew all relevant facts but made a legal error for which he was solely responsible). Rather than breaking causation, Metro Corrections's decision to hold Ortega was a natural, foreseeable consequence of ICE's issuing the detainer. Thus, Plaintiff has adequately pleaded that the ICE Defendants' conduct caused the constitutional violation.

The ICE Defendants note that the Sixth Circuit has held that an immigration detainer does not implicate a prisoner's due process rights. *Prieto v. Gulch*, 913 F.2d 1159, 1161 (6th

Cir. 1990) (quoting *Ganem v. INS*, 825 F.2d 410 (6th Cir. 1987) (unpublished table decision) ("[a] detainer which adversely affects a prisoner's classification . . . does not activate a due process right")); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). However, that holding is inapposite to this Court's determination of whether issuing the detainer proximately caused Ortega's removal from his home and incarceration in county jail.[3]

The 12(b)(6) motion makes no other challenge on behalf of all ICE Defendants as to the allegations of a violation of a constitutional right or whether that right was clearly established. *Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003). Thus, the Court cannot find that the unknown ICE agents and employees are entitled to qualified immunity.

### III.

Defendants Morton and Wong, the director of ICE and head of ICE's Chicago office, argue that Plaintiff has not stated a *Bivens* claim against them because neither defendant was involved in the conduct described in the Complaint. They claim that the Complaint "lacks any degree of specificity about [their] actions . . . demonstrating that either was personally involved or responsible for any of the alleged [constitutional] violations." Defs.' Mem. 5. Likewise, Morton and Wong note they cannot be held liable under a *respondeat superior* theory for the constitutional torts of their subordinates. *Hays v. Jefferson Cnty. Ky.*, 668 F.2d 869, 872 (6th Cir. 1982).

The Complaint makes six allegations as to Morton and Wong: (1) they knew, or

---

[3] In *Ganem*, the plaintiff was a federal prisoner and alien seeking a writ of mandamus to force the Immigration and Naturalization Service (ICE's predecessor) to hold a hearing on deportation. The Sixth Circuit rejected his claim that the INS detainer, which adversely affected his prison classification and eligibility for rehabilitative programs, violated his due process rights. *Ganem*, 1987 WL 38350 at *1. *Prieto* involved the same challenge to immigration detainers, but made through a writ of habeas corpus. Ortega, in contrast, is bringing a *Bivens* action and challenges his removal from home incarceration to county jail.

reasonably should have known, that ICE agents knowingly issued an unlawful detainer against Ortega without a reasonable basis merely because his name and date of birth were similar to those of an illegal immigrant; (2) they "failed to train, supervise, and/or discipline" ICE agents "in their behavior and conduct toward Plaintiff," amounting to a deliberate indifference to Plaintiff's rights; (3) they failed to implement proper hiring, training, and supervision policies as to the proper methods of issuing detainers so as to decrease the chance that citizens who are Hispanic would be detained through mistaken identity; (4) they personally directed ICE agents in the issuance of detainers, resulting in Plaintiff's seizure; (5) they knew and tolerated that ICE agents were placing detainers on citizens with similar identifying information as illegal aliens; (6) they implemented policies creating an unreasonable risk that their subordinates would commit constitutional violations and failed to adopt corrective measures to reduce or eliminate such risk. First Am. Compl. 6-7.

A supervisory official may be liable for encouraging, approving, or knowingly acquiescing in the unconstitutional conduct of his or her subordinates. *Coffey v. Ky. State Reformatory*, 2010 U.S. Dist. Lexis 18630 at *7 (W.D.Ky. March 3, 2010) (citing *Hays*, 668 F.2d at 872-74). Although the Complaint makes such allegations, it lacks factual content to allow a reasonable inference that Morton and Wong are liable under these theories. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Plaintiff's theory of supervisory liability in this case is certainly possible, but the alleged facts make no connection whatsoever between Morton or Wong and the unconstitutional injury, apart from the mere fact that they were high-level ICE officials. Without such a connection, Plaintiff's claim is not plausible on its face. *See id.*

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that ICE Defendants' Motion to Dismiss is SUSTAINED in part and Defendants John Morton, Richard Wong, and United States Immigration and Customs Enforcement are DISMISSED from this action.

IT IS FURTHER ORDERED that the Motion to Dismiss is DENIED in part and the Unknown Agents and Employees in the Employ of ICE remain as defendants.

IT IS FURTHER ORDERED that ICE shall identify those persons who have any knowledge or information concerning the ICE detainer in this case.

The Court will set a conference with the parties in the near future.

cc: Counsel of Record