UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:11-CV-00429-H

RICHARD ORTEGA, PLAINTIFF

V.

JOHN T. CLOYD, AGENT IN THE DEFENDANTS
EMPLOY OF U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT

and

LOUISVILLE/JEFFERSON COUNTY
METRO GOVERNMENT

and

MARK BOLTON, DIRECTOR
LOUISVILLE/JEFFERSON COUNTY METRO
CORRECTIONS

and

WILLIAM SKAGGS AND LORI EPPLER,
OFFICERS IN THE EMPLOY OF LOUISVILLE/
JEFFERSON COUNT METRO CORRECTIONS

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Richard Ortega, brought this action against officers and agents of United States Immigration and Customs Enforcement ("ICE") and Louisville Metro Corrections ("Metro Corrections"), for alleged constitutional violations. This case has endured several procedural twists and turns before finally settling in federal court. The Court is now confronted with unusual and unfortunate circumstance which, nevertheless, yield a clear result.

While on home incarceration, Ortega was detained by Metro Corrections Officers based upon

the existence of an ICE detainer indicating that Ortega was an illegal alien. As it turned out, the information which justified the detainer was misapplied, as Ortega is a U.S. citizen. Ortega sued the state officials under 42 U.S.C. § 1983 and federal officials under a *Bivens* claim. Both sets of Defendants have each moved separately to dismiss based on failure to state a claim upon which relief can be grated and qualified immunity. For judicial economy purposes, the Court will address both motions in this opinion. For the following reasons, the Court will sustain the motions to dismiss.

I.

On March 18, 2011, Ortega entered a guilty plea and was convicted in Jefferson County District Court of Driving under the Influence, First Offense. State District Court Judge Armstrong entered an order immediately sentencing Ortega to eleven days of home incarceration. The next day, on March 19, 2011, Metro Corrections Officers William Skaggs and Lori Eppler removed Ortega from his home and placed him in jail based on an ICE-issued detainer. The complaint alleges that ICE Agent John T. Cloyd improperly issued the ICE detainer when he mistakenly confused Ortega with an illegal alien that has a very similar name and birth date. The detainer was invalid, as Ortega is an U.S. citizen. Ortega contends that Metro Corrections has a "longstanding policy to incarcerate any individual who currently had an ICE detainer on him or her." Consequently, Metro Correction officers detained Ortega and he remained in jail until March 22, 2011.[1]

---

[1] Defendant Louisville/Jefferson County Metro Government contends that Ortega remained in custody until March 23, 2011, the date Judge Armstrong ordered his release. The date of release is not material and has no bearing on the Court's analysis.

On August 25, 2011, Ortega brought this action asserting constitutional violations pursuant to 42 U.S.C. § 1983 against Metro Corrections and its officers (collectively "Metro Defendants"). He also brought a *Bivens* claim against ICE and its officers (collectively "Federal Defendants").[2] "Both *Bivens* and § 1983 allow a plaintiff to seek money damages from government officials who have violated" constitutional rights. *Wilson v. Layne*, 526 U.S. 603, 609 (1999). Ortega alleged violations of the Fourth, Fifth, Eighth and Fourteenth Amendments.

Metro Defendants have moved to dismiss the claim for failure to state a claim and/or based on qualified immunity. The remaining Federal Defendant, ICE Agent Cloyd, has also moved to dismiss on the same grounds. Given the different position of Defendants, the Court will analyze separately whether Ortega has stated a plausible claim for constitutional violations against each defendant.

II.

Ortega brings this suit under 42 U.S.C. § 1983 against Metro Defendants for violations of the Fourth Amendment, Eighth Amendment, Due Process Clause and Equal Protection Clause. Under 42 U.S.C. § 1983, "an individual may bring a private right of action against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution of conferred by federal statute." *Bletz v. Gribble*, 641 F.3d 743, 749 (6th Cir. 2011).

---

[2] Ortega initially filed suit against Federal Defendants United States Immigration and Customs Enforcement, ICE's supervisory personnel Richard A. Wong and John Morton, and Unknown Agents and Employees in the Employ of ICE. The Federal Defendants moved to dismiss the claims against them, based on the agency's sovereign immunity, and the qualified immunity of the remaining Defendants. On April 27, 2012, this Court entered an Order dismissing Federal Defendants Morton, Wong and United States Immigration and Customs Enforcement agency from this action, but retained in the action the Unknown Agent and Employees in the Employ of ICE. This Court ordered ICE to identify all ICE Agents who were involved in Ortega's ICE detainer. ICE complied, naming Agent Cloyd. Accordingly, the only Federal Defendant that remains is ICE Agent Cloyd. With respect to Metro Corrections Defendants, Ortega's First Amended Complaint names Louisville/Jefferson County Metro Government, Director of Metro Corrections Mark Bolton in his individual capacity, and Metro Corrections Officers Eppler and Skaggs. All Metro Defendants remain in the action.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts, when construed favorably, establish (1) the deprivation of a right secured by the Constitution of laws of the United States (2) caused by a person acting under the color of state law." *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007)(internal quotations omitted). Government officials, however, may be immune from liability for their constitutional violations under the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). Qualified immunity is designed to shield government officials from actions "insofar as their conduct does not violate a clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. The Sixth Circuit uses a two-step inquiry to assess qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)(internal quotations omitted). For a constitutional right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable [government official] would understand that what he is doing violates that right." *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009). Therefore, dismissal based on qualified immunity is proper if the official was unaware that his or her conduct was clearly unlawful. *See Bletz*, 641 F.3d at 749.

A court is permitted to consider the two-part test in whatever order is appropriate and may begin with the second inquiry. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court will address each alleged constitutional violation individually. Under each claim, the facts and law appear to present clearly circumstances under which the Metro Defendants are entitled to qualified immunity.

A.

First, Ortega alleges a violation of the Fourth Amendment, which prohibits unreasonable searches and seizures. Ortega argues that the Metro Defendants violated his Fourth Amendment rights when Metro Corrections Officers Eppler and Skaggs seized Ortega, removed him from his home and transferred him to the Metro Corrections facility. Metro Defendants counter based on qualified immunity by arguing that they would not have reason to know the detainer was faulty and thus moving Ortega from one place of confinement to another was reasonable under the circumstances. This Court agrees.

No evidence suggests that the Metro Defendants had reason to believe ICE's detainer was unlawful. They carried out a rather routine seizure quite unaware that the information used to generate the detainer was misapplied. Thus their action in serving a detainer on Ortega and moving him from one place of confinement to another was reasonable under the circumstances. Accordingly, Metro Defendants are entitled to qualified immunity.

B.

Next, Ortega alleges a violation of the Eighth Amendment which prohibits cruel and unusual punishment. It is unclear which actions Ortega alleges constitute such a claim. Moreover, other than a conclusory statement that the actions of Metro Defendants amounted to "cruel and unusual punishment within the meaning of the Eighth Amendment," Ortega's complaint is scant with facts supporting a claim for an Eighth Amendment violation. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)("To move beyond the pleading stage . . ., an inmate must allege that he has been deprived a minimal civilized measure of life's necessities."). Ortega's memoranda never addresses this constitutional violation.

Regardless, the facts in this case fall short of supporting an Eighth Amendment violation. Ortega was detained, albeit in a different location, for a period of imprisonment that was no longer than the sentence imposed by Judge Armstrong. Nothing about the period of his confinement or the conditions of his confinement were disproportionately harsh. Accordingly, Ortega has failed to articulate an Eighth Amendment violation.

C.

Ortega has alleged that Metro Defendants' actions violated the Due Process Clause of the Fourteenth Amendment by transferring him from home incarceration to the Metro Corrections facility during his sentence. The due process clause prohibits a state from depriving a defendant of liberty without due process of law. In the case of a defendant lawfully convicted of a crime, "he loses a significant interest in his liberty for the period of his sentence." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Even assuming Ortega could establish a liberty interest in home confinement when he has been so sentenced, the Court concludes that Metro Defendants are entitled to qualified immunity based on the second prong of the qualified immunity analysis, that the right was clearly established.[3] *See Colvin*, 605 F.3d at 290 ("We are free to consider [the two-part test] in whatever order is appropriate in light of the issues before us, and therefore need not decide whether there was a constitutional violation if we determine that an official in [Defendant's] position would reasonably believe that his actions were not in contravention of [Plaintiff's] constitutional rights")(internal quotations omitted).

---

[3] The Court need not decide whether Ortega has articulated a cognizable liberty interest for purposes of this analysis because qualified immunity is found based on the second prong. Moreover, case law is varied in determining whether changes to an inmate's conditions of confinement implicate a liberty interest. The Court does not intend to add to this issue.

6

The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable agent in the defendant's position that his conduct was unlawful. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). Here, Metro Defendants would have to be aware that in transferring Ortega they violated his liberty interest. Metro Defendants acted pursuant to a detainer. The government has a significant interest in detaining certain aliens who are flight risks while the government's removal decisions are pending. *See Demore v. Kim*, 538 U.S. 510, 523-25 (2003). Metro Defendants honored the detainer and had no reason to believe it was incorrect. It was thus reasonable for the Metro Defendants to remove Ortega from home incarceration based upon the policy that aliens present a risk of evading immigration authorities. In this situation, the Court finds Metro Defendants could have reasonably believed that their conduct was lawful. Accordingly, Metro Defendants are entitled to qualified immunity on this claim as well.

### D.

Lastly, Ortega alleges Metro Defendants failed to provide equal protection of the laws to American citizens of Hispanic descent. Ortega's Second Amendment Complaint alleges "it was [Metro] Defendant's long-standing policy to incarcerate *any* individual who currently has an ICE detainer on him or her." Taking Ortega's allegations as true, he was not treated differently than any other person who is subject to an ICE detainer as Metro Defendants evidently incarcerate every individual subject to a detainer. He was not detained due to his Hispanic ethnicity; rather he was incarcerated because ICE lodged a detainer on him. Ortega has failed to plausibly allege Metro Defendants violated his right to equal protection.

### III.

Ortega brings a *Bivens* claim against ICE Agent Cloyd for violating his Fourth and Fifth Amendment rights. ICE Agent Cloyd has moved to dismiss based on Ortega's failure to state a claim upon which relief can be granted and the doctrine of qualified immunity. The qualified immunity analysis is identical in suits under § 1983 and *Bivens*. *Wilson*, 526 U.S. at 609. Because the alleged constitutional violations fail for the same reason, the Court will address the two violations together.

Ortega alleges that ICE Agent Cloyd issued an invalid detainer, "causing an unreasonable seizure of his person and a restraint of his liberty" in violation of the Fourth and Fifth Amendments.[4] According to Ortega's complaint, Agent Cloyd improperly issued the ICE detainer as a result of another illegal alien having a similar name and birth date as Ortega. Qualified immunity shields government officials who make objectively reasonable mistakes in discretionary decisions within the scope of their responsibilities. *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012).

An ICE agent could reasonably but erroneously issue a detainer for a U.S. citizen if there is an error in its database or if the individual's name is similar to someone else who is in the database. As alleged, the illegal alien and Ortega had very similar names and birth dates. It is entirely plausible that ICE Agent Cloyd was unaware that he was issuing an unlawful detainer and thus could have not known that he violated Ortega's "clearly established" right. ICE Agent Cloyd was acting within the scope of his employment when he made an unfortunate but honest mistake and is consequently entitled to qualified immunity. Accordingly, Ortega's claims fail as a matter of law.

The Court recognizes the ongoing confusion regarding proper boundaries and communications between ICE and local law enforcement. Unfortunately, mistakes happen.

---

[4] With respect to the Fourth Amendment claim, this Court previously found ICE issuing a detainer caused Ortega's incarceration. This allowed Ortega to proceed with this Fourth Amendment claim against ICE Agent Cloyd.

However, the circumstances in this case do not rise to the level of constitutional violations for which Plaintiff pursue claims.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Federal Defendants' Motion to Dismiss is SUSTAINED.

IT IS FURTHER ORDERED that Metro Defendants' Motion to Dismiss is SUSTAINED.

IT IS FURTHER ORDERED that all of Plaintiff's claims are DISMISSED WITH PREJUDICE.

cc:   Counsel of Record